**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DREAM BIG MEDIA INC.; et al., | Nos.  24-4968 |
| Plaintiffs - Appellants, | D.C. No. 3:22-cv-02314-RS |
| v. | |
| ALPHABET INC. and GOOGLE LLC, | MEMORANDUM[*] |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, Chief District Judge, Presiding

Argued and Submitted November 20, 2025
San Francisco, California

Before:  S.R. THOMAS, BRESS, and MENDOZA, Circuit Judges.

Dream Big Media, Inc., Getify Solutions, Inc., and Sprinter Supplier LLC on

behalf of a putative class, (collectively, "Dream Big Media") appeal the district

court's dismissal with prejudice of their Second Amended Complaint.  Dream Big

Media brings claims of negative tying and exclusive dealing under the Sherman

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Antitrust Act ("Sherman Act") §§ 1 and 3 and the Clayton Antitrust Act ("Clayton Act") § 3 against Alphabet, Inc. and Google, LLC (collectively, "Google").  15 U.S.C. §§ 1, 3, 14.  Dream Big Media brings additional claims under Sherman Act § 2 and California's Unfair Competition Law.  *Id*. § 2; Cal. Bus. & Prof. Code § 17200. We have jurisdiction under 28 U.S.C. § 1291.  We review de novo the district court's dismissal for failure to state an antitrust claim.  *Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 970 (9th Cir. 2008).  Because the parties are familiar with the facts and the procedural history, we will not recount them here.  We affirm.

I

To allege a per se illegal tying arrangement, Dream Big Media must allege: "(1) that [Google] tied together the sale of two distinct products or services; (2) that [Google] possesses enough economic power in the tying market to coerce its customers into purchasing the tied product; and (3) that the tying arrangement affects a not insubstantial volume of commerce in the tied product market." *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016).  A negative tie, alleged here, is where "the customer promises not to take the tied product from the defendant's competitor." *Id.*

2

The Second Amended Complaint does not plausibly allege that Google negatively tied its Maps application programming interfaces ("APIs") to its Places APIs and its Routes APIs. Section 3.2.3(e) of Google's Terms of Service ("Google's Terms") provides:

> To avoid quality issues and/or brand confusion, Customer will not use the Google Maps Core Services with or near a non-Google Map in a Customer Application. For example, Customer will not (i) display or use Places content on a non-Google map, (ii) display Street View imagery and non-Google maps on the same screen, or (iii) link a Google Map to non-Google Maps content or a non-Google map.

Assuming "non-Google Maps content" encompasses non-Google routes APIs and non-Google places APIs, Section 3.2.3(e)(iii) still does not constitute a negative tie because it prohibits only linking a Google Map to non-Google Maps content—not the use or display of non-Google maps content to a Google Map.

The Second Amended Complaint does not contain well-pleaded allegations relating to linking or why any limits on linking would affect Dream Big Media. Instead, Dream Big Media merely alleges that it wishes to use or display non-Google routes APIs and non-Google places APIs on one app, webpage, or website. This display or use of non-Google places APIs and non-Google routes APIs with Google Maps APIs is permissible under Google's Terms. Google's Terms' prohibition on linking in Section 3.2.3(e)(iii) cannot be read to also prohibit

3

displaying or using, as set forth in Sections 3.2.3(e)(i) and (ii). *See, e.g., Alameda Cnty. Flood Control & Water v. Dep't of Water Res.*, 213 Cal.App.4th 1163, 1186 ("Where the same word or phrase might have been used in the same connection in different portions of a statute but a different word or phrase having different meaning is used instead, the construction employing that different meaning is to be favored.").

Moreover, Dream Big Media's market definitions are deficient because the alleged markets are comprised of complements, not substitutes. *See Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1203 (9th Cir. 1997). Failure to adequately define relevant markets can alone constitute reason to dismiss under 12(b)(6). *Newcal Indus., Inc. v. Ikon Office Sol. Off.*, 513 F.3d 1038, 1045 (9th Cir. 2008).

Finally, Dream Big Media's statement that competitors offer free, accurate, detailed maps API defeats the coercion requirement for negative tying. The required allegation is that "[Google] possesses enough economic power in the *tying* product to coerce its customers into purchasing the tied product." *Aerotec Int'l Inc.*, 836 F.3d at 1178 (emphasis added). Dream Big Media alleges that Google has 90% market share and a competitive data advantage. But a "mere showing of substantial or even dominant market share alone cannot establish market power

sufficient to carry out a predatory scheme." *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1439 (9th Cir. 1995). Therefore, the admission that competitors offer free, accurate, detailed maps APIs is fatal, as the contractual arrangement in Google's Terms cannot "pressure buyers into taking the tied [product]" where businesses can access equivalent maps API from competitors. *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 6-7 (1958) (reasoning that there is no restraint on trade where "one of a dozen food stores" only sells flour and sugar together where competitors are "ready and able to sell flour by itself").

## II

"Exclusive dealing involves an agreement between a vendor and a buyer that prevents the buyer from purchasing a given good from any other vendor." *Allied Orthopedic Appliances, Inc. v. Tyco Health Care Grp., LP*, 592 F.3d 991, 996 (9th Cir. 2010). Because Dream Big Media fails to allege any negative tying claim, its exclusive dealing claim necessarily fails as well, as there is no "agreement . . . that prevents the buyer from purchasing a given good from any other vendor." *Id.*

Sherman Act § 2 requires an allegation of anticompetitive conduct. *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 893 (9th Cir. 2008). Because we conclude above that Dream Big Media has not plausibly alleged negative tying or exclusive dealing, its Sherman Act § 2 claim also fails without the requisite

5

anticompetitive conduct. Similarly, because there is no unreasonable restraint on trade under federal antitrust law, Dream Big Media's claim under California's Unfair Competition Law also fails. *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1124 (9th Cir. 2018).

III

For the foregoing reasons, we affirm the district court's dismissal of Dream Big Media's Second Amended Complaint.

**AFFIRMED.**